Good morning. May it please the Court. My name is Hillary Hahn, and I'm appearing on behalf of the petitioner in this case. The first thing I'd like to address this morning is the jurisdictional issue. The government has argued that because of Section 1252A2C that the Court doesn't have jurisdiction over this petition, and we believe that's incorrect for two reasons. First of all, by the plain language of Section 1252A2C, it only applies to those who have been convicted of a criminal offense covered in Section 1182A2. And under the Real ID Act, we have jurisdiction over legal and constitutional questions, and that's what you're raising, right? That's right, Judge. I think maybe you can say – why don't you wait to rebuttal on that? I mean, if he says anything that you need to respond to. Okay. I certainly will. Don't waste your time. Okay. I'll get to the substance of the argument. Our first argument is that the notice to Mr. Gonzales of the consequences of failing to voluntarily depart the United States was deficient. And the government relies heavily on the fact that at Mr. Gonzales' last hearing before the immigration judge, the judge told him of the – stated what the consequences of failing to voluntarily depart the country were. But I think the problem with the government's argument can be illustrated by a somewhat extreme example. Let's say that the immigration judge had said to him, Mr. Gonzales, you can ignore everything I'm going to tell you right now, and then went on to give him those consequences. I think we'd all agree. You know, I'm going to be candid with you. I don't think that's a very – I think that's kind of a loser argument for you. I think your strongest argument is the IAC. Yeah. Well, I mean, we – Well, sorry. Just go to the IAC. Okay. Ineffective assistance of counsel. Right. Plausible ground for relief. Yeah. I mean, you know, I think that, you know, with regard to, I mean, the ineffective assistance of counsel, first of all, it's relevant in the confluence of factors regarding the sufficiency of the notice. But the ineffective assistance of counsel is also relevant with regard to whether Mr. Gonzales voluntarily, knowingly, and intelligently waived his right to appeal. Well, but that can't make – that can't make the IJ – You'll have to enunciate each word separately because, you know, you're – do you ever take public speaking? I will, Judge. What? I will slow down. You slow down. Yeah. I'm not going to say they're unrelated, but you can't – but if the IJ says certain things and the lawyer tells him to do something else, that goes to the IAC. You can't fault the IJ for the fact that someone else is whispering over in his ear the wrong information. Right. I mean, I think that really goes to the strength of your IAC. Right. And I agree with that, except for the fact that the immigration judge actually reinforced the ineffective assistance of counsel in that she, first of all, when – at the second hearing before her, the immigration judge actually told Mr. Gonzales that he had to voluntarily depart the country, but if he got a pardon, it would be a different story. We know that. So why don't you go to the ineffective assistance of counsel? Well, I mean, the ineffective assistance of counsel – I mean, this lawyer is just a great guy, isn't he? He's been disbarred. He fled the country. Right. And, I mean, obviously our other argument is that, you know, the ineffective assistance of counsel led to, first of all, his overstaying voluntary departure. Well, I think what we're – this is what's called a clue in the business. We're telling you that's your strongest argument, so why don't you – it's not – we haven't – we've read everything. Come over closer, we'll hit you on the head. Well, yes. We're trying to help you out. I understand, Judge. I mean, the ineffective assistance of counsel goes, I mean, most importantly, to the fact that there was not a voluntary and no unintelligent waiver of his right to appeal, because at the time that he took voluntary departure, the attorney, by his own admission, didn't sufficiently clarify with Mr. Gonzalez what the consequences were of failing to voluntarily depart the United States. So the choice that he made to waive his right of appeal was based on a false premise, and that was that he would be able to. You know, Gonzalez told him – not Gonzalez, his lawyer told him, Johnson Ortiz, he had this idea that if he got a pardon from the governor, that would clear everything up and it would help him. But Gonzalez was probably eligible for treatment under the Federal First Offender Act, and this would have cleared things up, right? That's correct. But he – but Johnson Ortiz, he never even brought that up. He dropped the ball on that, right? That's correct. Well, that's what you want to talk about, see. Yeah. I mean, this – I mean, the strategy that, you know, Mr. Johnson Ortiz should have taken was, I mean, first of all, to advise him that the pardon was ineffective. Well, pardon wouldn't do any good. Right. Pardon wouldn't do any good, and he told him to overstay his voluntary departure period. And then – so that caused your client to be barred from adjusting his status for 10 years. That, and he also ended up with a removal order, which is another bar to adjustment of status and unlawful departure. Now, he's expunged now, right? He has expunged, yes. But back then, obviously, he might not have been able to get expunged right away. What his lawyer would have had to do is say, hey, can I have a continuance for two years to get an expungement? But since we moved so quickly in our system of justice that, you know, probably now he's had time to – he's had time to get expunged. You know, his children are probably valedictorian of their class, and he's probably won the Nobel Peace Prize. But that – you know, so now he would be eligible, right? But for the fact that he didn't leave. That's corrected. And why don't I just go ahead and save the rest of my time for rebuttal? All right. May I please record? Good morning, Your Honors. Judge Noonan from San Francisco. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. I oppose it. Let me ask you a question. Why did you send us this 28-J letter, you know, telling us we don't have jurisdiction? You don't even refer to the Real ID Act, which tells us we have jurisdiction over legal and constitutional questions. Well, I don't think you have jurisdiction under the Real ID Act. Well, why don't you – My argument will assume that you do, but – Why don't you put that in your letter then? Because it wasn't an issue in the case. But I'm happy to write you a letter explaining why. I get a lot of mail, and so can you. But in any event, the Real ID Act only applies to pure questions of law, and this ineffective assistance counsel argument is not a pure question of law. It requires the finding of fact. But I'm going to assume from my argument that it does apply. I will also talk about the jurisdictional question, and I just want to say that it's when the – Well, ineffective assistance of counsel is a constitutional issue, isn't it? It has constitutional overtones. The answer is yes. Your Honor, we may have differing opinions on that. We've received a 28-day letter from the Petitioner. I'd just like to address that very, very briefly. He cites to Azarte, number one, it really doesn't relate to anything – Azarte doesn't relate to anything in his brief. Number two, Azarte doesn't apply because for the holding in Azarte to apply, the motion to reopen would have had to have been timely filed. And it wasn't timely filed in this case. And that requirement is in Azarte, and it's clarified in Judge Reinhardt's opinion in a subsequent case, Barroso v. Gonzales, which is at 429F3-1195. With respect to the ineffective assistance of counsel, that really kind of goes hand in hand with the jurisdictional argument. And I just wanted to say that when counsel was beginning his jurisdictional argument, he seemed to be making an argument that wasn't in his brief. So when he gets up here and makes that argument, I just want to advise the Court that we would certainly, if this argument wasn't made in the brief, we would certainly be requesting leave to respond to it once we – once I get back to Washington and have time to digest it. But in any event, the question is whether or not – whether or not Mr. Gonzales received a rehabilitative expungement, an expungement which would have qualified him for treatment under Lujan Armendariz. And the answer is absolutely not. And the reason is twofold. Well, actually onefold. It is twofold. I'm sorry. Mr. Gonzales had some of the consequences of his convictions abated pursuant to the combination of two State statutes, Washington Statute 9.948.637, which at relevant times was denominated 9.948.220, but substance hasn't changed. And the second statute is 9.948.640, and 9.948.640 was the effectuating I wasn't, Your Honor, and it confuses me, too. But 9.948.640 was the statute by which he received his partial abatement. But that statute is dependent on receiving a discharge, a certificate of discharge pursuant to 9.4A.637, and 9.948.637 provides that a convicted felon can, if he satisfies his sentence, can receive a discharge if he satisfied his sentence again, but that such discharge is not, and this is statutory language, not based on a finding of rehabilitation. So you, and the abatement statute, 9.948.640 Let me cut to this here. Are you saying now that the expungement that he has received, if he had had that at the time, he still wasn't eligible? Correct. Correct. And he could never have been eligible under Lujan. That's correct. Because, again, Lujan requires a number of things, two of which are that the expungement be pursuant to a State rehabilitative statute. And this clearly isn't a State rehabilitative statute because the operative the basis upon which one is eligible to get the expungement is that he receives a certificate of discharge, which by statute is not a finding of rehabilitation. So it's not a rehabilitative statute. That's number one. Lujan also requires that, excuse me, that he was, he wasn't, there's nothing here that tells us that he was, you're talking about sending him to a program to cure him of his drug dependency? Is that what you're talking about? No, I'm talking about the statute under which he received his partial expungement statute. Again, a 30-day sentence, right? 28 days, yes. 28. I'm sorry. 28 days. Two years probation. Two years probation. And he satisfied all that. Correct. And there were no drugs in his possession. He was just in the car with some other people. Well, we don't know that, Your Honor. That's what it says. That's what it says. And I apologize for interrupting. That's what the pardon says. There's no conviction records that say that. In fact, the conviction records cite a provision of the statute in which he was charged and he was charged. We can't take the word of the Governor of the State. Well, there is no evidence where the Governor got that assertion, whether or not it was independent or whether or not it was simply based upon the application, which may or may not have been accurate. We do know that he was convicted of a statute, and the statute was possession with intent to manufacture or deliver. Well, that's not simple possession. And, you know, I'm not saying that he wasn't convicted of simple possession. I'm saying that there's no evidence which would compel that conclusion. But, you know, we're not going to – I mean, we do – He got 28 days. That's – right? I'm sorry? His sentence was 28 days. It was. It was. That doesn't sound like a drug pen – a king pen. Oh, no. No, it wasn't. But, again, the First Offender Act requires simple possession. I'm saying there's simply not enough proof to show that that is the case in this case. But even if it were, he didn't get a rehabilitative expungement. Didn't he get summary probation? He actually got a period of – I think a 28-month or 24-month period of supervision. But, again, that doesn't establish that he only was convicted of simple possession. Plus, another component of Lujan is that the expungement must be full and complete. It wasn't full and complete because those statutes also provide that the abatement that he – under the abatement he received, the conviction is still good in future prosecution. So he didn't receive a full and complete pardon – or, excuse me, expungement. And that's important because the result in Lujan is solely based upon the determination that the new definition of conviction did not repeal the Federal First Offender Act. And any alien who seeks to escape application of the new definition must receive the exact same relief as is provided under the Federal First Offender Act. It obviously doesn't have to be in the same form as the First Offender Act. The Court has held that. It has to receive the same relief because, again, it's based solely upon the determination that the new conviction definition did not repeal Federal First Offender Act. So it has to be – the result of the expungement has to be identical. And the Federal First Offender Act is a complete expungement. It expunges everything. It expunges the record. It expunges every trace of that conviction. This statute does not. So for both of those reasons, if not the possession, the simple possession issue, the abatement that he received wasn't sufficient to satisfy Lujan, and this Court doesn't answer it. But, you know, what you're talking about, you know, the expungement definition, do you know of any State that provides for that? Provides for what, Your Honor? That provides the kind of expungement, any State law that – Oh, yes. Which State? Well, I believe Lujan involved the States of Idaho and Arizona. And the Court found that the expungements under those statutes were the equivalent of the result of the Federal First Offender Act and that they did, in fact, remove the immigration consequences of those individuals' convictions. But, again, that doesn't apply here. So that removes the Court's – What's the difference here? Again, it's not pursuant to a State rehabilitative statute because the Washington statute says by its language that it's not a finding of rehabilitation. And because it was only a partial abatement, it did not expunge everything. The conviction can still be used in the State of Washington – excuse me – can still be used in the State of Washington for future prosecutions. So that – I mean, I have other arguments, but I see my time has run out. But that gets rid of any possible prejudice he could have suffered, even if his attorneys misserved them. But they couldn't have because his attorneys – I mean, he received this discharge certificate, which is not rehabilitative in nature, in 1978. So his attorneys in – Let me ask you this. What do you make of the fact – what do you make of the fact that the immigration judges and the system knows that it's riddled with incompetent attorneys? You have this fellow here, Johnson Ortiz. They've got a whole big file on him. They know what he's doing. It goes on. And the system doesn't do anything about it. I mean, isn't the government complicit in that? I don't believe so, Your Honor. Why not? Because the statute doesn't provide that the government – Well, and I know for a long time, and it was still true, that last time I inquired, it's been a couple of years, a disbarred lawyer could practice before the immigration courts. Did you know that? I don't know that that's true. I mean – Well, check on it, would you? If they're disbarred under the BIA before the immigration court – No, they're disbarred, say, from the Ninth Circuit or from the State Bar of California. If that's true, that's true, Your Honor, and that's probably a shame. Okay, yeah. But let me just say this, because last time I called, it's been a couple of years, and I talked to the head lawyer for the immigration service downtown. The answer was that a disbarred lawyer is better than no lawyer. That's what I got. Your Honor, I have no comment. Okay, all right. As a representative of the government or personally. All I can say is the matters that his attorney was disbarred for have nothing to do with this case. And there is no evidence of ineffective assistance to counsel. He certainly didn't tell this individual to not to voluntarily depart on time. Nobody did. And. You'd recommend him to the next person that needs help in the immigration court. I'm not saying I'd recommend him, but I'm saying that he didn't do anything wrong. In this case, he couldn't have. You're over your time. All right. May I just say one sentence? Sure. He couldn't have because he obviously knew that Lou Hannon, the type of expungement that he got, could not have satisfied Lou Hannon. Okay, thanks. Thank you, Your Honor. Thank you. In your time remaining, I'd like you to respond to his argument about that the expungement would not be sufficient. I certainly will. Even before reaching the substance of that argument, the problem with the government's argument is that. You reached the substance of it. That's what the judge asked you to do. A bigger point is that the board didn't. Oral argument isn't your time. It's our time to have. We're the ones that are going to decide the case. So if I tell you I have a question that I think it's in your best interest to answer it if you want to have your position. Right. I guess I maybe misspoke. But my point is that the board didn't raise that issue. So under Chenery, that issue is not before the board at all. The board didn't find that this was not a proper expungement. So that's not an issue before the court at all. And beyond that, the government didn't raise that issue in its reply brief. So it's not properly even before the court. If the court does remand this case because of the ineffective assistance of counsel, then the government can certainly make that argument before the agency. But it's not a proper argument to make before the court at this point. But beyond that, the substance of the argument is incorrect in that Lujan talks about rehabilitative statutes and kind of their what are kind of similar statutes. And in Washington, the statute under which Mr. Gonzalez expunged his conviction was the closest one to the rehabilitative statute to the First Defenders Act that exists in Washington, and it is proper. Well, I guess on that, though, you know, what is it? Close only counts in horseshoes and hand grenades. Is it possible, I guess, would it be possible that a state does not have a statute that would satisfy that? I guess it could be possible, but I don't think that's the case with Washington. But what you're saying is all you want to do is argue that. Right. That's right. I mean, once it goes back before the agency, then the government can make the argument and an immigration judge can determine whether that's correct or not. I see here that in this Washington forum, signed by the judge or the commissioner, it says, you know, motion for order vacating conviction, records of the following offenses as granted, and they have the number of the cause and the count and all the rest of it, possession of cocaine, and it says here, the clerk of the court shall immediately transmit a certified copy of this order to the Washington State Patrol and to local law enforcement agency, which shall immediately update their records to reflect the vacation of the conviction of the offense listed in paragraph 3.2. And then the Washington State Patrol shall transmit a copy of this order. Federal Bureau of Investigation, the Washington State Patrol or local law enforcement agency may not disseminate or disclose a conviction that has been vacated, et cetera, to any person except to other criminal justice enforcement agencies. That's what it says. Right. And that, you know, we believe does satisfy Lujan. But, again, it's not something the court needs to decide. And just very briefly, the government also stated that we didn't raise the jurisdictional argument in our opening brief, which is just absolutely wrong. In pages 13 to 18 of the opening brief, we clearly laid out why section 1252A2C doesn't apply. We didn't brief the real ID issue, the 1252A2D argument, and that's only because the real ID hadn't come out at the time we filed the opening brief. And, similarly, with regard to Asarte, that case came out right after we filed the opening brief, which is why we didn't address it in our opening brief. But it's really just a kind of a fallback argument. And if the court doesn't agree with any of our other arguments, we think it would be appropriate for the court to remand to the board to consider this case in light of Asarte, since they considered it in light of Matter of Shock. Okay. Thank you. Thank you, counsel. The case is well argued. It's now under submission.
judges: Pregerson, Noonan, Callahan